IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

George F. Delaney,    )
    Plaintiff,    )
                  )
v.    )    1:10cv388 (CMH/TCB)
                  )
Dr. John O. Marsh, et al.,    )
    Defendants.    )

MEMORANDUM OPINION AND ORDER

George F. Delaney, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that medical staff at his former and current places of incarceration have exhibited deliberate indifference to his serious medical needs. Plaintiff has applied to proceed in forma pauperis in this action. After reviewing plaintiff's complaint, the claims against the defendants must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[1]

I.

In a detailed, 42-page complaint, plaintiff alleges that on April 30, 2008, he injured the fifth

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
    (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.

finger on his left hand while playing softball at Augusta Correctional Center ("ACC"). The injury caused plaintiff to experience severe pain, swelling, and discoloration, and made him unable to bend the fingers on his left hand. On May 1, plaintiff was seen by Dr. Marsh in the prison medical department. Dr. Marsh instructed an assistant to "buddy tape" plaintiff's injured finger, prescribed Motrin for plaintiff's pain, scheduled plaintiff for x-rays, and issued a medical pass to allow plaintiff to keep medical supplies in his cell for 30 days. On May 6, x-rays were taken of plaintiff's injured finger, and from May 6 until May 18, the finger was re-wrapped and taped "periodically" by ACC's medical staff.

On May 16, 2008, plaintiff was transferred to Greensville Correctional Center ("GCC"). At his medical intake screening, plaintiff "disclosed' the date of the injury to his finger and that x-rays had been taken. The finger was re-wrapped and taped. Despite requesting to be sent to an outside specialist, plaintiff received no medical appointment for his finger until June 4, when he was seen by the prison medical department, and the finger again was re-wrapped and taped. In May and June, 2008, plaintiff submitted "numerous" request forms, sick call requests, and emergency grievances, seeking treatment by a physician for his injured finger. During that time, the finger continued to be re-wrapped and taped "periodically" by medical employees at GCC, and plaintiff also was provided with extra tape, gauze and splints for use in re-wrapping his finger. On July 23, plaintiff was seen in the GCC medical department, and a physician's assistant diagnosed an abnormality in plaintiff's finger and referred plaintiff to Dr. Gore. Plaintiff was told at that time that his finger would need to be surgically re-broken and re-set, but since the finger's condition did not constitute a serious medical problem, any treatment would be elective. The physician's assistant ordered the wrapping and taping of plaintiff's finger to continue.

On July 28, plaintiff was seen in GCC's medical department, where it was observed that plaintiff could not bend his finger or close his hand, and that he was in pain. On July 30, the finger again was x-rayed, and when plaintiff was seen by Dr. Gore in August, the finger was diagnosed as having an abnormality, and plaintiff was referred to the Hand Clinic at the Medical College of Virginia ("MCV"). However, "instead of sending plaintiff out to be seen by an orthopedic specialist that day," Compl. at 23, plaintiff was not transported to MCV until September 10, when he received surgery for "an unrelated medical problem." Id. Plaintiff thereafter was transported to the infirmary at Powhatan Correctional Center ("PCC") to recover. On October 8, plaintiff was transferred to PCC's general population.

On October 12, 2008, plaintiff submitted a request to PCC's medical department, inquiring when he would be seen at the Hand Clinic. After a response stating that there was no referral to the Hand Clinic in plaintiff's file, plaintiff filed on informal complaint on October 19. Plaintiff received a response stating that an appointment at the Hand Clinic was "pending." On November 16, plaintiff submitted a regular grievance, stating that his finger was getting worse, and he received a response the following day stating that he had not used the informal process to resolve his issue. Nonetheless, plaintiff "later" was transported to MCV and seen by orthopedic specialist Dr. J. Isaac in the Hand Clinic. Dr. Isaac took x-rays of plaintiff's finger and diagnosed PIP joint dislocation, and told plaintiff that because the finger had gone untreated for so long, surgically re-breaking and re-setting the finger "would do no good." Compl. at 25. Instead, Dr. Isaac recommended that plaintiff receive therapy with the Hand Clinic's physical therapist. Plaintiff was seen by the physical therapist that same day, and the therapist allegedly told him that he would need to be seen "at least once a week" thereafter. Compl. at 26. On December 2, plaintiff submitted an informal complaint that his

3

appointments with the MCV physical therapist were not being kept, and he received a response three days later stating that the physical therapist at MCV had shown plaintiff exercises that he could follow on his own. Plf. Ex. 17. Plaintiff filed a regular grievance on December 15, stating that he could not follow the exercise regime by himself, and that the hand therapist used measuring devices to determine plaintiff's progress in flexibility for use by the orthopedic specialist in determining what additional tests plaintiff might need. The grievance was returned with a notation that the filing time had expired. Plaintiff asserts that the grievance in fact was timely, and that the response to it constituted intentional interference with his right to be seen by medical authorities.

During a therapy session at MCV in February, 2009, the therapist told plaintiff that the therapy was doing no good, and she referred plaintiff back to Dr. Isaac. Plaintiff was seen by Dr. Isaac on March 10, and Dr. Isaac told plaintiff that surgery would be required for plaintiff to regain the use of his finger. The surgery was performed by Dr. Isaac on April 10, and plaintiff was returned to MCV two weeks later to begin physical therapy for range of motion, flexibility, and strength training. However, plaintiff was "only" transported to MCV for therapy sessions "approximately 3 times." On June 1, plaintiff initiated a series of grievances that his appointments for therapy at MCV were not being kept, and on June 15, he was transferred to the Virginia Beach Correctional Center for court. When plaintiff returned to PCC on August 10, he submitted another grievance regarding his physical therapy appointments, and he was placed on sick call to discuss the issue with a doctor. On October 29, Dr. Igbal referred plaintiff to the MCV Hand Clinic. However, despite submitting sick call slips on November 9, 19, and 24, plaintiff was not transported to MCV for an appointment. Plaintiff continued to file numerous complaints and grievances, insisting that his finger required "continual care," but he has been denied continuity care for his injury. As a result, plaintiff allegedly

continues to suffer pain and is unable to move his injured finger or to close his left hand completely. Compl. at 33. As a result of this disability, plaintiff is "unable to participate in everyday activities," which causes him emotional distress and mental anguish. Compl. at 34 -35. Plaintiff asserts that defendants' actions were tortious and violated plaintiff's rights under the Eighth Amendment, and he seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## II.

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129

S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III.

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). To establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. Second, he must allege deliberate indifference to that medical need. Under this second prong, an assertion of mere negligence or even

malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. However, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

At this juncture, it is apparent that plaintiff's claim of inadequate medical care fails to meet the requirements for an actionable Eighth Amendment violation. As to the first component of a Eighth Amendment claim, a condition is sufficiently serious to merit constitutional protection if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). It is doubtful that a broken or dislocated finger which admittedly has been treated is "a condition of urgency" which would support an Eighth Amendment violation. Cf. Loe, 582 F.2d at 1291 (finding that the "excruciating pain" of a broken arm left untreated is sufficiently serious). However, even assuming *aguendo* that plaintiff's broken or dislocated finger could be considered sufficiently serious to satisfy the first element of an Eighth Amendment claim, his allegations regarding the prison medical staff's efforts to treat that condition belie his assertion that defendants were deliberately indifferent to his medical needs. According to plaintiff's own account, he was provided with several x-rays of his finger, treatment in the form of

repeated wrappings and tapings, pain medication, and permission to keep needed medical supplies in his cell. When those measures did not alleviate the condition, plaintiff was sent for several therapy sessions and eventual surgery to outside orthopedic specialists. Patently, according to plaintiff's own allegations, there was no deliberate indifference to his injured finger, either through actual intent or reckless disregard. Cf. Miltier, 896 F.2d at 851. Although plaintiff clearly disagrees with prison medical personnel over the course of treatment he received, such a disagreement as a matter of law is insufficient to state a claim for § 1983 relief. Wright, 766 F.2d at 849; Russell, 528 F.2d at 319.

Lastly, because plaintiff states no federal claim, the Court also may not exercise supplemental jurisdiction as to the several state tort claims plaintiff asserts. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."). Nonetheless, in light of plaintiff's pro se status, he is hereby advised that he is free to pursue his tort claims in the appropriate state court.

## IV.

For the foregoing reasons, plaintiff's complaint states no claim for violation of his rights under the Eighth Amendment, and must be dismissed for failure to state a claim. 28 U.S.C. § 1915A(b)(1).

Accordingly, it is hereby

ORDERED that plaintiff's complaint be and is DISMISSED, WITH PREJUDICE for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff is advised that, pursuant to 28 U.S.C. § 1915(g),[2] this dismissal

---

[2] 28 U.S.C. § 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action

may affect his ability to proceed in forma pauperis in future civil actions; and it is further

ORDERED that the Clerk record this dismissal for purposes of the Prison Litigation Reform Act.

To appeal, plaintiff must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. Fed R. App. P. 4(a). A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court.

The Clerk is directed to send of copy of this Memorandum Opinion and Order to plaintiff and to close this civil case.

Entered this 21st day of May 2010.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia

---

or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.